UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ROCHELLE TILLETT** | |
| **Plaintiff,** | Docket No. 2:17-CV-7952 |
| vs. | Civil Action |
| **AUTOZONE, INC.,** and **NICOLA RIGBY, individually, RICHARD WEST, individually,** and **TAMEKA GREEN, individually,** | **COMPLAINT** and **JURY DEMAND** |
| **Defendants.** | |

Plaintiff, Rochelle Tillett, by and through her attorneys, the Derek Smith Law Group, PLLC, hereby complains of the Defendants upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), and to remedy violations of the New Jersey Law Against Discrimination ("NJLAD"), based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking declaratory and injunctive relief and damages to redress the injuries that Plaintiff has suffered as a result of, *inter alia*, being harassed and discriminated against by her employer

on the basis of her sex/gender, together with sexual harassment, creating a hostile work environment, retaliation, and constructive discharge.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII. The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

3. Additionally, this Court has supplemental jurisdiction under the State law causes of action asserted in this action.

4. On or about October 10, 2016, Plaintiff submitted a Charge with the U.S. Equal Employment Opportunity Commission ("EEOC").

5. On or about July 7, 2017, Plaintiff received a Right to Sue Letter from the EEOC.

6. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

7. Venue is proper in this District based upon the fact that the events or omissions which gave rise to the claims asserted herein occurred within the District of New Jersey.

## PARTIES

8. Plaintiff is a female resident of the State of New Jersey, County of Essex.

9. At all times material, Defendant AUTOZONE, INC., individually and d/b/a (herein also referred to as "AUTOZONE") was and is a foreign business corporation duly existing under the laws of the State of Tennessee.

10. At all times material, Defendant AUTOZONE was and is a foreign business corporation authorized to conduct business in the State of New Jersey.

11. At all times material, Defendant AUTOZONE was and is a foreign business corporation which does conduct business in the State of New Jersey.

12. At all times material, Defendant AUTOZONE managed, owned and/or operated a business located at 295 Springfield Ave, Newark, NJ 07103.

13. At all times material, Defendant AUTOZONE managed, owned and/or operated a business located at 1128-1140 Springfield Ave, Irvington, NJ 07111.

14. At all times material, Defendant AUTOZONE managed, owned and/or operated a business located at 500-514 Central Ave, East Orange, NJ 07018.

15. At all times material, Defendant NICOLA RIGBY (hereinafter also referred to as "RIGBY") was and is an employee of Defendant AUTOZONE.

16. At all times material, Defendant RIGBY was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

17. At all times material, Defendant RICHARD WEST (hereinafter also referred to as "WEST") was and is an employee of Defendant AUTOZONE.

18. At all times material, Defendant WEST was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

19. At all times material, Defendant TAMEKA GREEN (hereinafter also referred to as "GREEN") was and is an employee of Defendant AUTOZONE.

20. At all times material, Defendant GREEN was Plaintiff' supervisor and/or had supervisory authority over Plaintiff.

21. Defendant AUTOZONE, Defendant RIGBY, Defendant WEST, and Defendant GREEN are also herein collectively referred to as "Defendants."

22. At all times material, Plaintiff was an employee of Defendant AUTOZONE.

23. At all times material, Defendant AUTOZONE was and is a qualified employer under the NJLAD.

## MATERIAL FACTS

24. On or about July 24, 2014, Plaintiff began working part-time for Defendants as a "Sales Representative."

25. In or around the beginning of August 2014, Defendant AUTOZONE's "Manager" Defendant RIGBY overheard Plaintiff talking to her coworkers about her part-time job as a pole aerobics instructor. Plaintiff showed her coworkers, one of whom was Defendant RIGBY's boyfriend, a picture of herself on a pole. Soon after, Defendant RIGBY became jealous of Plaintiff and she started harassing and humiliating her in order to force her to quit.

26. By way of example, in or around September 2014, Defendant RIGBY started telling Defendant AUTOZONE customers that Plaintiff was a prostitute. She would also say to customers, "**If you have enough money, you can have her, bring her home and fuck her**."

27. On another occasion, Defendant RIGBY told Defendant AUTOZONE customers that Plaintiff had butt implants.

28. In or around October 2014, a Defendant AUTOZONE customer informed Plaintiff that Defendant RIGBY was calling her a prostitute, and had been for some time.

29. In or around the end of October 2014, Plaintiff complained to Defendant AUTOZONE's "Store Manager," Shaunette Doris, that Defendant RIGBY told customers that she was a prostitute. Plaintiff also requested to be transferred to a different AUTOZONE location. Ms. Doris denied Plaintiff's request, and simply told Plaintiff, **"Just let it go."** Soon thereafter, Defendant RIGBY began to retaliate against Plaintiff for her complaint.

30. By way of example, Defendant RIGBY continued to call Plaintiff a **"prostitute,"** and also started calling her a **"whore."**

31. In or around the end of December 2014, in further retaliation, and to set Plaintiff up for termination, Defendant RIGBY alleged that Plaintiff had called her a "bitch." Defendant RIGBY also started to give Plaintiff more work than others and started giving Plaintiff work that other employees were supposed to do.

32. On or about January 3, 2015, Ms. Doris called Plaintiff into a meeting with Human Resources to investigate Defendant RIGBY's allegations. Although Plaintiff again complained about being harassed and retaliated against for complaining about sexual harassment, Ms. Doris ignored Plaintiff's complaints. Ms. Doris also told Plaintiff, "I don't like your face when you come to work in the morning." Plaintiff again requested a transfer to another AUTOZONE location. Ms. Doris simply said, "**If you don't like it here, quit**." Then, Ms. Doris told Plaintiff to clock out and go home. Defendants suspended Plaintiff for complaining about sexual harassment in the workplace.

33. That same day, Plaintiff also complained to Defendant's "District Manager," Tammy Hamilton, about being suspended for complaining about sexual harassment. Ms. Hamilton ignored Plaintiff's complaint. Plaintiff's complaints were never investigated or addressed.

34. Later that same day, Plaintiff also complained to Defendant AUTOZONE's "Human Resources Manager," Richard Greives, that Defendant RIGBY routinely called her a prostitute to customers, and retaliated against her by increasing her workload despite her part-time status. Plaintiff again requested a transfer to another AUTOZONE location. Mr. Greives finally granted Plaintiff's request and Plaintiff was transferred to Defendant AUTOZONE's Irvington, New Jersey store.

35. In or around the middle of January 2015, Plaintiff began working part-time at Defendant AUTOZONE's Irvington location.  Plaintiff was assigned to work under the supervision of Defendant AUTOZONE's "Part Sales Manager," Defendant WEST.  Plaintiff and Defendant WEST were friends before Plaintiff started working at the Irvington store.

36. In or around January 2015, Plaintiff's coworkers began to sexually harass Plaintiff because of her friendship with Defendant WEST.

37. For example, Defendant AUTOZONE's employees would tell Plaintiff, **"[Defendant WEST] likes you, he wants to have sex with you," "You should just give him some," and "Why won't you just give it up to him already."**  Plaintiff was humiliated that she continued to be harassed even after being transferred to a new AUTOZONE location.

38. That same day, Plaintiff complained to Defendant AUTOZONE "Store Manager" Lance White that her coworkers were harassing her about sleeping with her supervisor; Defendant WEST.  However, as is typical for Defendant AUTOZONE managers, Mr. White ignored Plaintiff's complaint.

39. In or around the beginning of April 2015, Defendant WEST asked Plaintiff if he could visit her at her home, so they could watch television together.  Plaintiff agreed.  However, as Plaintiff and Defendant WEST were watching television on the couch, Defendant WEST climbed on top of Plaintiff and tried to kiss and grope her body.  Plaintiff was shocked, pushed Defendant WEST off her, and immediately told Defendant WEST to leave.

40. Also, while at work, Defendant WEST began to rub against Plaintiff's body while she was assisting customers.  Defendant WEST would also leer at Plaintiff's body.  Plaintiff was disgusted and repeatedly rejected Defendant WEST's advances.  Plaintiff also ended her friendship with Defendant WEST.

41. The sexually harassing comments from Plaintiff's coworkers about her having sex with Defendant WEST continued.

42. The next day, Defendant WEST began retaliating against Plaintiff for her refusal to give in to his sexual advances.

43. Defendant WEST now ignored Plaintiff's work-related questions and refused to assist her with customer service.

44. In or around June 2015, Defendant AUTOZONE's "Manager," Defendant GREEN, told Plaintiff, "**We know you two are fucking, [Defendant WEST] is mad at you because he wants some, you should just give him some**." Plaintiff told Defendant GREEN that she was only interested in a professional relationship with Defendant WEST. Nevertheless, Defendant GREEN continued to harass Plaintiff about sleeping with Defendant WEST.

45. In or around July 2015, Plaintiff complained to Mr. White that Defendant GREEN was harassing her about sleeping with her supervisor, which was untrue. Plaintiff also complained about Defendant WEST's inappropriate touching and retaliation. Defendants ignored Plaintiff's complaints.

46. In or around the beginning of September 2015, Plaintiff saw a coworker steal an alternator. Plaintiff reported the theft to Mr. White, who also informed Defendant GREEN.

47. The next day, in retaliation for Plaintiff's complaint of theft, as well as her complaints of sexual harassment, Defendant GREEN walked up to Plaintiff and threatened to punch her in the face. Then, Defendant GREEN threatened that she would call her (Defendant GREEN's) family members to the store to harm Plaintiff. Plaintiff was then suspended without pay.

48. In or around September 2015, Plaintiff's coworker, Scheretta Hester, called Defendant AUTOZONE's corporate headquarters to complain about the harassment toward Plaintiff.

       Ms. Hester complained that Plaintiff suffered from harassment and retaliation at work, and feared for her life.

49. Finally, in or around October 2015, Defendants' District Manager, Tammy Hamilton, contacted Plaintiff to get a statement about her complaints of discrimination against Defendant WEST and Defendant GREEN. Plaintiff reiterated that Defendant WEST made sexual advances toward her. Plaintiff also complained that Defendant GREEN was sexually harassing her and retaliating against her for her complaints. Plaintiff again requested a transfer to another AUTOZONE location. Defendants granted Plaintiff's request and transferred Plaintiff to a third AUTOZONE store in East Orange, New Jersey.

50. In or around October 2015, Plaintiff began working full-time at Defendant AUTOZONE's East Orange location as a "loaner." At the new location, Plaintiff was required to report to AUTOZONE "Store Manager" Gaitri Genesh.

51. In or around the middle of October, Ms. Genesh told Plaintiff that she requested that Defendant WEST be transferred to the East Orange location. When Plaintiff realized she would have to work with Defendant WEST and be subjected to his harassment, despite her transfer to a new location, she began to cry. Plaintiff then called Mr. Grieves to complain about being forced to work with Defendant WEST again. Nevertheless, Defendant WEST started at the East Orange location the next day.

52. Defendants' actions were intended to retaliate against Plaintiff and constructively terminate Plaintiff.

53. In or around the end of December 2015, in further retaliation for Plaintiff's complaint, Defendant WEST cut Plaintiff's hours from 40 hours a week to 32 hours a week.

54. In or around January 2016, Plaintiff sent a written complaint, via email, to Defendant AUTOZONE's "Vice President," William C. Rhodes, and Ms. Hamilton. In her complaint, Plaintiff stated, **"I feel like I have been targeted, harassed both sexually and emotionally, and discriminated against. My efforts to seek help have been in vain. I believe that I was placed in these intolerable environments to make me so uncomfortable that I would quit my job."** Plaintiff also requested that Defendants commence an investigation into the harassment, but nothing was done.

55. On or about February 26, 2016, when it was clear that Defendants would not take Plaintiff's complaints seriously, Plaintiff had no choice but to resign from her position with Defendants.

56. On or about February 26, 2016, Defendants constructively terminated Plaintiff on the basis of her sex/gender.

57. Defendants' actions were intended to, and did, create a hostile work environment that no reasonable person would tolerate.

58. Defendants' actions were intended to constructively terminate Plaintiff.

59. Defendants would not have harassed Plaintiff but for her sex/gender.

60. Defendants would not have harassed or retaliated against Plaintiff but for her complaints about Defendants' unlawful employment practices.

61. The benefits of Plaintiff's continued employment were based on her submission or rejection of Defendant WEST's sexual advances.

62. The above are just some of the incidents of harassment, discrimination, and retaliation Plaintiff had to, and continues to, endure working for Defendants.

63. As a result of Defendants' actions, Plaintiff felt, and still feels, extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

64. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

65. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer future loss of income, loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

66. As Defendants' conduct has been malicious, willful, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against Defendants.

## AS A FIRST CAUSE OF ACTION
## UNDER THE NEW JERSEY STATE LAW
## <u>DISCRIMINATION</u>

67. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

68. New Jersey's Law against Discrimination Section 10:5-12(a) sets forth in pertinent part as follows: " It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: a) For an employer, because sex . . . to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

69. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff based upon her sex, together with sexual harassment, *quid pro quo* sexual harassment, and creating a hostile work environment.

## AS A SECOND CAUSE OF ACTION
## UNDER NEW JERSEY STATE LAW
## RETALIATION

70. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

71. New Jersey's Law against Discrimination Section 10:5-12(d) sets forth that it is unlawful "[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

72. Defendants violated this section as set forth herein, including, but not limited to, retaliating against Plaintiff for her lawful complaints of sex/gender discrimination.

## AS A THIRD CAUSE OF ACTION
## UNDER NEW JERSEY STATE LAW
## AIDING AND ABETTING

73. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

74. New Jersey's Law against Discrimination Section 10:5-12(e) sets forth in pertinent part as follows: "Unlawful employment practices, discrimination.  It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:  e) For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

75. Defendants engaged in an unlawful discriminatory practice by aiding and abetting the discrimination against the Plaintiff as set forth herein.

76. Defendants violated all other applicable sections of N.J. Stat. § 10:5-12(e) *et. seq*.

## AS A FOURTH CAUSE OF ACTION
## UNDER TITLE VII
## DISCRIMINATION
## (AGAINST DEFENDANT AUTOZONE)

58. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

59. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) [Section 703] provides that it shall be an unlawful employment practice for an employer: "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . ."

60. Defendant AUTOZONE engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by subjecting Plaintiff to discrimination on the basis of her sex, together with sexual harassment, *quid pro quo* sexual harassment, and creating a hostile work environment.

61. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Title VII.

62. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A FIFTH CAUSE OF ACTION
## UNDER TITLE VII
## RETALIATION
## (AGAINST DEFENDANT AUTOZONE)

63. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

64. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer,

> (1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

65. Defendant AUTOZONE engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.,* by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

66. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that the Defendants engaged in unlawful employment practices prohibited by Title VII the NJLAD and the New Jersey common law, and discriminated against Plaintiff on the basis of her sex/gender, together with sexual harassment, retaliation, and constructive discharge.

B. Awarding damages to the Plaintiff, retroactive to the date of discharge, for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful discharge and failure to hire/rehire, and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

D.  Awarding Plaintiff punitive damages;

E.  Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action; and

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff demands judgment against Defendants in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated:  New York, New York
October 5, 2017

**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff*

By:  _____
Zachary Holzberg, Esq.
30 Broad Street, 35th Floor
New York, New York 10004
(212) 587-0760