NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| |
|---|
| ROCHELLE TILLETT, <br><br> Plaintiff, <br><br> v. <br><br> AUTOZONERS, LLC, *individually and d/b/a* "AUTOZONE, INC.," *et al.*, <br><br> Defendants. |

Civil Action No.: 17-7952 (JLL)

OPINION

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendant AutoZoners, LLC's ("Defendant") Partial Motion to Dismiss Plaintiff Rochelle Tillett's ("Plaintiff") Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 9). Plaintiff has submitted opposition, and Defendant has submitted a reply thereto. (ECF Nos. 14, 15). For the reasons stated herein, the Court denies Defendant's Partial Motion to Dismiss.

## I. BACKGROUND[1]

Plaintiff alleges that various individuals working for Defendant sexually harassed her and retaliated against her when she rejected sexual advances or filed complaints over the course of two years at three of Defendant's stores. (*See generally* FAC).

---

[1] This background is derived from Plaintiff's Amended Complaint, (ECF No. 8 ("FAC")), which the Court must accept as true at this stage. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

Plaintiff began working for Defendant as a sales representative on July 24, 2014 at Defendant's store located at 295 Springfield Ave, Newark, NJ 07103 ("Newark location"). (FAC ¶¶ 12, 24). In September 2014, Plaintiff's coworker, Nicola Rigby, began telling costumers that Plaintiff was a prostitute. (FAC ¶ 25). Plaintiff complained to the Newark store manager, Ms. Doris, in October 2014. (FAC ¶ 26). Ms. Rigby subsequently retaliated against Plaintiff by increasing her workload. (FAC ¶¶ 26, 31). Plaintiff also alleges that Ms. Doris suspended her for complaining about Ms. Rigby's harassment. (FAC ¶ 29). In January 2015, Plaintiff complained to Defendant's district manager, Defendant Tamara Hamilton, but her complaints were ignored. (FAC ¶ 30). That same day, Plaintiff complained to Defendant's Human Resources Manager about Ms. Rigby's behavior. (FAC ¶ 31). Plaintiff was transferred to Defendant's store located at 1128-1140 Springfield Ave, Irvington, NJ 07111 ("Irvington location") sometime in January 2015. (FAC ¶ 31).

At Defendant's Irvington location, Plaintiff worked under Defendant Richard West, who was the "Part Sales Manager" and Plaintiff's friend from outside of work. (FAC ¶ 32). As soon as Plaintiff arrived in January 2015, coworkers began to harass Plaintiff about her friendship with Mr. West, commenting that she should "just give it up to him already." (FAC ¶¶ 33–34). Plaintiff complained to the store manager, but the manager ignored her complaints. (FAC ¶ 36). In April 2015, Mr. West visited Plaintiff's house and made unwanted sexual advances towards her, which Plaintiff rejected. (FAC ¶ 38). In May 2015, Defendant's manager, Defendant Tameka Green, accused Plaintiff of being sexually involved with Mr. West and told Plaintiff that Mr. West was "mad at you because he wants some, you should just give him some." (FAC ¶ 39). Plaintiff complained to Defendant's Irvington store manager, Mr. White, about Ms. Green, but her complaints were ignored. (FAC ¶ 49). From May to July of 2015, Mr. West rubbed against

Plaintiff and made other unwanted sexual advances at work. (FAC ¶ 41). Plaintiff made numerous complaints to management, but Mr. West continued his behavior. (FAC ¶ 42). In July 2015, Mr. West retaliated against Plaintiff for refusing his sexual advances by ignoring her at work and refusing to assist her with customer service issues. (FAC ¶¶ 45–46).

This conduct continued until September 2015, when Plaintiff's coworker called Defendant's corporate headquarters to complain about the harassment Plaintiff was enduring. (FAC ¶ 52). In October 2015, Ms. Hamilton contacted Plaintiff to obtain a statement regarding her complaints of discrimination and retaliation. (FAC ¶ 53). Plaintiff explained the situation to Ms. Hamilton and requested another transfer. (FAC ¶ 54). Plaintiff's request for a transfer was approved, and she began working at Defendant's store located at 500-514 Central Ave, East Orange, NJ 07018 ("East Orange location") in October 2015. (FAC ¶¶ 54–55).

A few weeks after the second transfer, Plaintiff was informed that Mr. West was also being transferred to the East Orange location. (FAC ¶ 56). Plaintiff became extremely anxious at the notion of working with Mr. West and immediately contacted Ms. Hamilton. (FAC ¶¶ 58–59). Plaintiff reminded Ms. Hamilton that Mr. West sexually harassed her at the Irvington location and that he was the reason for her transfer. (FAC ¶ 59). Ms. Hamilton disregarded Plaintiff's complaints and confirmed that Mr. West was being transferred to the East Orange location. (FAC ¶ 60). Mr. West started working at the East Orange location the next day and retaliated against Plaintiff for her complaints by cutting her hours from forty hours a week to thirty-two hours a week. (FAC ¶ 62, 64).

In November 2015, Plaintiff met with Defendant's Human Resources Department to file a formal complaint about being forced to work with Mr. West. (FAC ¶ 67). Plaintiff also complained to Ms. Hamilton in December 2015 that Mr. West continued to make sexual comments

3

and retaliate against her. (FAC ¶ 70). After Human Resources investigated Plaintiff's complaints, Mr. West was transferred to a different store in December 2015. (FAC ¶¶ 69, 71). However, Plaintiff claims that Ms. Hamilton retaliated against her for taking her complaints to Human Resources. (FAC ¶ 72). In December 2015, Ms. Hamilton denied Plaintiff's application for a promotion. (FAC ¶ 73). Additionally, between December 2015 and February 2016, Ms. Hamilton assigned Plaintiff more work than her other coworkers and assigned tasks that were outside the scope of Plaintiff's normal duties, including lifting heavy objects. (FAC ¶ 75). Ms. Hamilton also assigned Plaintiff to work at various store locations with little notice. (FAC ¶ 80).

In January 2016, Plaintiff sent a written complaint to Defendant's Vice President, claiming that she has been purposely "placed in these intolerable environments" in order to make her so uncomfortable that she would quit. (FAC ¶ 79). In her complaint, Plaintiff requested that Defendant investigate the harassment she experienced, but she never received a response. (FAC ¶ 79). By February 26, 2016, Plaintiff had given up on the idea that Defendant would investigate her complaints and resigned from her position. (FAC ¶ 81).

On October 10, 2016, Plaintiff submitted a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). (FAC ¶ 4). Plaintiff received a right to sue letter from the EEOC on July 7, 2017. (FAC ¶ 5). She then filed this action on October 5, 2017. (ECF No. 1). Plaintiff's FAC sets forth five claims: (1) Discrimination under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et seq.*; (2) Retaliation under NJLAD; (3) Aiding and Abetting under NJLAD; (4) Discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; and (5) Retaliation under Title VII. (FAC ¶¶ 98–116).[2] Plaintiff

---

[2] Paragraphs 108 through 117 of the Amended Complaint are improperly numbered as 58 through 66.

4

also asserts a claim of constructive discharge under Title VII and NJLAD. (FAC ¶¶ 1, 82, 83, and p. 78). Defendant now moves to dismiss Plaintiff's Amended Complaint as to all claims except those for retaliation at the East Orange location when Mr. West reduced Plaintiff's hours. (ECF No. 9-1 at 2).

## II. LEGAL STANDARD

Defendant seeks to dismiss Plaintiff's Amended Complaint for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6). To withstand a motion to dismiss for failure to state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the Court must take three steps. "First, it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.' Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, '[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint,

matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## III. ANALYSIS

### A. Statute of Limitations and Continuing Violation Doctrine.

The statute of limitations for a Title VII claim does not begin to run until there is a "final agency action, such as the issuance of a right-to-sue letter." *Burgh v. Borough Council of the Borough of Montrose*, 251 F.3d 465, 470–71 (3d Cir. 2001). In New Jersey, a plaintiff has 300 days to file their charge with the EEOC. 42 U.S.C. § 2000e-5(e)(1); *Cardenas v. Massey*, 269 F.3d 251, 255 n.2 (3d Cir. 2001) (applying a 300 day deadline because New Jersey has its own anti-discrimination statute.). For NJLAD, a two-year statute of limitations applies. *Montells v. Haynes*, 133 N.J. 282, 292 (1993)).

With regard to Title VII, Plaintiff filed her charge with the EEOC on October 10, 2016 and was given a right to sue letter on July 7, 2017. (FAC ¶¶ 4–5). Defendant argues that the claims that address conduct that occurred at the Irvington and Newark locations are outside the 300-day EEOC limitations period and therefore should be dismissed. (ECF No. 9-1 at 6–7). However, the EEOC found that whatever claims Plaintiff submitted to it were timely. This is clearly evidenced by the fact that it issued Plaintiff a right-to-sue letter. The Court accepts this determination at this juncture and notes that further discovery is necessary to determine whether Plaintiff was given the right to sue for conduct occurring at all three locations or only a subset of the locations.

Moreover, the continuing violation doctrine covers Plaintiff's claims under NJLAD. The continuing violation doctrine applies to NJLAD claims "[w]hen an individual is subject to a continual, cumulative pattern of tortious conduct." *Wilson v. Wal-Mart Stores*, 158 N.J. 263, 272

(1999). Here, the conduct at all three locations involved various supervisors of the same employer disregarding Plaintiff's repeated complaints that she was experiencing continuous harassment and retaliatory conduct. (*See generally* FAC). At the Newark location, Ms. Rigby repeatedly told customers that Plaintiff was a prostitute and, when she complained to the manager, Ms. Doris, her complaints were ignored and she was suspended. (FAC ¶¶ 25–29). At the Irvington and East Orange locations, Mr. West repeatedly made sexual advances towards Plaintiff, and, when she rejected him, Mr. West retaliated against her by ignoring her at work or cutting her hours. (FAC ¶¶ 38, 41, 45–46, 49, 64, 70). Other employees of Defendant, like Ms. Green and Ms. Hamilton, either encouraged Plaintiff to engage in intercourse with Mr. West or disregarded Plaintiff's numerous complaints. (FAC ¶¶ 30, 34, 39, 59–61). Plaintiff complained to Defendant's upper management, district office, and corporate office at least six times, yet Defendant took no action regarding her complaints. (FAC ¶¶ 30, 42, 49, 52, 59, 79, 81, 83). Any conduct that occurred at the East Orange location after October of 2015 falls within the statute of limitations for NJLAD. Because some of the harassment occurred within the two year statute of limitations, and the harassment that occurred outside the statute of limitations is connected to the claims that are timely filed, the continuing violations doctrine applies to Plaintiff's NLAD claims.

### B. Discrimination under Title VII and NJLAD

Defendant separately argues that Plaintiff's Title VII and NJLAD Discrimination claims fail because Plaintiff cannot show *quid pro quo* sexual harassment. (ECF No. 9-1 at 14). Sexual harassment, in the form of either *quid pro quo* sexual harassment or a hostile work environment, is a category of discrimination that violates both Title VII and NJLAD. *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65 (1986); *Erickson v. Marsh & McLennan Co.*, 117 N.J. 539, 555–56 (1990)). Unwanted sexual advances can constitute *quid pro quo* sexual harassment when

7

"submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment" or "submission to or rejection of such conduct by an individual is used as the basis for employment decisions." *See Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 27 (3d Cir. 1997) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1296 (3d Cir. 1997)); *Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 601 (1993) (applying a similar description in an NJLAD case).

In this case, Plaintiff has sufficiently pled the latter version of *quid pro quo* sexual harassment, because Mr. West repeatedly made sexual advances and, when Plaintiff rejected these advances, Mr. West refused to help her at work and cut her hours from forty hours a week to thirty-two hours a week. (FAC ¶¶ 41, 45–46, 64). When Plaintiff first rejected Mr. West's advances, the Irvington location manager, Ms. Green, told Plaintiff that "[Mr. West] is mad at you because he wants some, you should just give him some." (FAC ¶ 39). These allegations, accepted as true, can support the conclusion that negative employment decisions were made against Plaintiff because she rejected Mr. West's advances. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281–83 (3d Cir. 2000). Therefore, Plaintiff has adequately pled *quid pro quo* sexual harassment under Title VII and NJLAD.

### C. Constructive Discharge under NJLAD and Title VII

Under New Jersey law, constructive discharge occurs when an "employer knowingly permit[s] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Shepherd v. Hunterdon Developmental Ctr.*, 174 N.J. 1, 27–28 (2002) (quoting *Muench v. Twp. of Haddon*, 255 N.J. Super. 288, 302 (App. Div. 1992)). The standard is similar in the Title VII context. *See Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004) (explaining that a constructive discharge claim requires "working conditions so intolerable that a reasonable person would have felt compelled to resign.").

8

As already discussed, Plaintiff was harassed over the course of two years, and every time she complained, Defendant's employees retaliated against her and Defendant disregarded her complaints. (FAC ¶¶ 25–96). Even after Plaintiff was finally transferred to the East Orange location, her harasser, Mr. West, was soon transferred there as well, despite the fact that Plaintiff was transferred to get away from him. (FAC ¶ 56). Plaintiff alleges that Defendant was aware of the sexual harassment she experienced based on her numerous complaints, yet did nothing to assist her in the hopes that Plaintiff would quit. (FAC ¶¶ 83, 87). Defendant argues that there was a gap in time between the last act of harassment and Plaintiff's resignation, which would negate any suggestion that Plaintiff was forced to resign. (ECF No. 9-1 at 12). However, Plaintiff alleges that Ms. Hamilton retaliated against her up until her resignation in February 2016. (FAC ¶¶ 72–75). Such allegations, accepted as true, warrant the conclusion that the conduct of Defendant and its employees could lead a reasonable person to resign under the circumstances, and that Defendant knowingly permitted these conditions to occur. *EEOC v. Foodcrafters Distrib. Co.*, 2006 U.S. Dist. LEXIS 11426, at *37–38 (D.N.J. Feb. 24, 2006). Therefore, Plaintiff's constructive discharge claim survives dismissal.

## IV. CONCLUSION

For the aforementioned reasons, Defendant's Partial Motion to Dismiss is hereby denied. An appropriate Order follows this Opinion.

Date: March 5, 2018

JOSE L. LINARES
Chief Judge, United States District Court